IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAURA V. LOPEZ-AGUIRRE,                    )
Individually, as Administrator of the Estate of   )
Julio C. Aguirre, deceased, and as Next Friend   )
for her minor children Em. A. and El. A.,        )
                                                 )
                    Plaintiff,                   )
                                                 )
          v.                                     )          Case No. 12-2752-JWL
                                                 )
BOARD OF COUNTY COMMISSIONERS                    )
OF SHAWNEE COUNTY, KANSAS, et al.,              )
                                                 )
                    Defendants.                  )
                                                 )
_____)

## MEMORANDUM AND ORDER

By this action, plaintiff asserts various federal constitutional and state-law claims based on the death of her husband after his post-arrest detention in jail. The matter is presently before the Court on motions to dismiss certain claims brought by the Board of County Commissioners of Shawnee County ("the County") and its defendant employees (collectively, "the County defendants") (Doc. # 42); the City of Topeka ("the City") and its defendant employees (collectively, "the City defendants") (Doc. # 45); and Stormont-Vail HealthCare, Inc. ("Stormont") (Doc. # 48). The Court rules as follows.

The County defendants' motion to dismiss is **granted in part and denied in part**. The motion is granted with respect to the following claims: Count I; Count III to the extent based on a violation of the Fourth Amendment; Count III asserted against

defendants Coleman, Brewer, Weber, Doud, and Schuetz; Counts IV, X, XI, and XII; and all claims asserted against individual County defendants in their official capacities. Those claims are hereby dismissed. The motion is otherwise denied. Plaintiff is granted leave to amend her complaint, on or before **May 3, 2013**, to cure certain pleading deficiencies as set forth herein.

The Court **grants** the City defendants' motion to dismiss, and all claims against defendants City of Topeka, Ronald Miller, Brad McCarter, and Conrad Unruh are hereby dismissed.

The Court also **grants** Stormont's motion to dismiss, and plaintiff's claim against that defendant is hereby dismissed.

## I. <u>Background</u>

By her first amended complaint, plaintiff has alleged the following facts: On December 2, 2010, decedent Julio Aguirre was taken by his family to Valeo Behavioral Health Care ("Valeo"), where he was diagnosed with manic severe bipolar disorder with psychotic features and was "noted to have extreme acting out behavior indicating danger or potential danger to property and self-care failure indicating an inability to manage daily basic needs that may cause self-injury." Valeo referred decedent to Stormont, where he was admitted for psychiatric treatment and diagnosed with manic depression bipolar disorder. Stormont instructed that decedent go to Valeo's short-term crisis-oriented residential stay facility for further treatment. While his family was trying to

have him admitted to the Valeo facility, decedent spit at two Topeka police officers and kicked one of them, and the officers arrested decedent. The officers then transported decedent to the Shawnee County Department of Corrections for detention.

While in detention with the County from December 2 to December 10, 2010, decedent exhibited various signs of instability and mental illness. On December 10, the County decided to transport decedent to a hospital, and the state court dismissed the charges against decedent and ordered his transfer to the hospital. Decedent was diagnosed with delirium and rhabdomyolysis, and he was then transferred to another hospital because of trauma and possible head injury. The next day, a CT scan revealed a herniation of the brain, and decedent perished on December 12, 2010. Decedent's final diagnosis was "acute renal failure, rhabdomyolysis, respiratory failure, marked electrolyte imbalance, ecchymoses abrasions to the torso and extremities and ultimately death." His autopsy diagnosis was multi-organ system failure.

Plaintiff was decedent's spouse. In 19 counts, plaintiff brings various claims on her own behalf, on behalf of her children, and as administrator of decedent's estate. Plaintiff has asserted federal constitutional claims against the City defendants and the County defendants pursuant to 42 U.S.C. § 1983, alleging a deliberate indifference to serious medical needs, the use of excessive force, failure to train and supervise, a violation of due process, and violative policies and practices. Plaintiff also asserts wrongful death and survival claims under Kansas law against the City and County defendants and other defendants. Against the County defendants, plaintiff asserts claims

3

of negligence, negligent supervision, negligent failure to train, battery, assault, false arrest and imprisonment, and outrage. Against the City defendants, plaintiff asserts claims of negligence, negligent supervision, negligent failure to train, false arrest and imprisonment, and outrage. Plaintiff asserts a medical negligence claim against Valeo and Stormont, and she asserts a general negligence claim against defendants Corizon Health, Inc. (alleged to have been under contract to provide medical services to County inmates) and Security Transport Services, Inc. (alleged to have transported decedent upon his release from the County facility).

## II.    Governing Standards

The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell*

4

*Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III.   **County Defendants' Motion to Dismiss (Doc. # 42)**

#### A.   *Count I – Deliberate Indifference*

In Count I of her complaint, plaintiff brings a claim under Section 1983, based on her allegation that the County defendants were deliberately indifferent to decedent's serious medical needs in violation of the Eighth Amendment. Although the same standards apply for a deliberate indifference claim under either amendment, plaintiff now concedes that because decedent was a pretrial detainee, her claim should have been brought under the Fourteenth Amendment instead of the Eighth Amendment. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Thus, although this Count is subject to dismissal as pleaded, plaintiff may amend her complaint to assert the proper constitutional basis for this claim.

The County defendants also argue that plaintiff's allegations are not sufficient to state a cognizable claim for deliberate indifference. In *Kikumura v. Osagie*, 461 F.3d 1269, 1291-92 (10th Cir. 2006), the Tenth Circuit set forth the standards that govern claims under section 1983 for deliberate indifference to serious medical needs:

It is well established that prison officials violate the Eighth

5

Amendment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care. At the same time, however, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. A complaint about an inadvertent failure to provide medical care or that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Rather, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

The test for a "deliberate indifference" claim under the Eighth Amendment has both an objective and subjective component. The objective component of the test is met if the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause. The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety.

. . .

To satisfy the objective component of a deliberate indifference claim arising under the Eight Amendment, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension. The purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering. Consequently, we look to the alleged injury claimed by the prisoner, and ask whether that harm is sufficiently serious.

When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must show that the delay resulted in substantial harm. That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. The "substantial harm" can also be an intermediate injury, such as pain experienced while waiting for treatment and analgesics. Although not every twinge of pain suffered as a result of delay in medical care is actionable, when the pain experienced during the delay is substantial, the prisoner establishes the objective element of the deliberate indifference test.

. . .

> The subjective component of a deliberate indifference claim requires an inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment. It is not enough to allege that prison officials failed to alleviate a significant risk that they should have perceived but did not. To show the requisite indifference, [the prisoner] must establish that defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measure to abate it.

*Id.* at 1291-93 (citations and quotations omitted). Prison officials' constitutional duty to provide necessary medical care to inmates extends to the provision of psychological or psychiatric care. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

Although the County defendants argue that plaintiff's allegations are too conclusory, they do not specifically dispute that the harm suffered by decedent, as alleged by plaintiff, was sufficiently serious under the objective prong of the applicable test, and the Court concludes that those allegations are sufficient. Plaintiff has alleged that plaintiff arrived with a mental illness; that his behavior while in detention was erratic, including an inability to comply with instructions, smearing and sliding in feces and urine in his cell, expressing a desire to hurt himself, an unkempt appearance, labile affect (rapid shifts in outward emotional expressions), throwing water, hyperactivity, and an acutely psychotic appearance. Moreover, decedent perished within two days after his detention ended.

The Court also concludes that, except with respect to one defendant, plaintiff's allegations satisfy the subjective prong that requires a disregard of a substantial risk of

harm. At this pleading stage, in light of the serious medical needs alleged, the allegations are sufficient to create a plausible inference that the County defendants who observed decedent's behavior or were made aware of that behavior and his condition, but still failed to ensure proper medical treatment, had the requisite state of mind.

The Court also rejects, with once exception, the County defendants' arguments pertaining to the specific individual defendants. Defendants stress that plaintiff's complaint includes allegations that the officers at the jail did take various actions regarding decedent's medical condition. The fact that they may have taken some action, however, does not mean that they satisfied all of decedent's serious medical needs as a matter of law. Each of these individual defendants are alleged to have failed to redress decedent's medical needs after having observed him in detention (including using force against him) or having been made aware of that behavior and decedent's medical condition.

The exception is the claim against defendant Clarissa Seats. The only facts alleged concerning Officer Seats's knowledge and actions are as follows: the City police officer who brought decedent to the County facility requested that decedent be "evaluated for risk of suicide given his sudden mood change and his highly agitated and upset state;" decedent at that time was well-nourished and physically healthy; at decedent's booking, Officer Seats indicated that he appeared confused and uncooperative; Officer Seats notified her supervisor of that fact and the Topeka officer's notes; and she transferred decedent to his cell. The Court concludes that these facts are

not sufficient to state a claim against Officer Seats for deliberate indifference.

The Tenth Circuit has stressed that, under the subjective component of the test for deliberate indifference, the defendant must have disregarded the *specific* risk of the harm ultimately suffered by the detainee. *See Martinez*, 563 F.3d at 1089-90. Thus, in *Martinez*, in which a detainee died of a heart attack after having been arrested for public intoxication, the Tenth Circuit held that the deliberate indifference standard required that the defendants have subjectively disregarded the specific risk of heart attack or death, and not merely the risks of intoxication. *See id.*; *see also Estate of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994).

In this case, the specific risk was that decedent would suffer mistreatment or neglect by County officials and death if he was maintained in detention instead of treated immediately. The facts alleged with respect to Officer Seats do not suggest plausibly that she appreciated any such serious risk to decedent if he were not treated immediately. *See infra* Part IV.A (similar conclusion reached with respect to City police officers). Nor do the alleged facts suggest that that specific risk was so substantial and pervasive that its knowledge by Officer Seats may be inferred. *See Estate of Hocker*, 22 F.3d at 1000. Accordingly, the Court dismisses plaintiff's deliberate indifference claim against defendant Seats.

Plaintiff has alleged facts, however, that are sufficient to distinguish the conduct of the other individual County defendants from that of Officer Seats. The other defendants are alleged to have failed to redress decedent's medical needs, beginning on

the day after decedent's booking, after having used physical force against him because of his failure to comply with instructions; or otherwise having observed him in detention (or having been made aware of that behavior). Those observations, combined with initial request to the County for a mental evaluation, provide sufficient facts from which knowledge of the specific risk of harm may reasonably and plausibly be inferred.

The County defendants also complain about the claims against supervisors who merely reviewed use-of-force reports concerning decedent. Through those reports, however, the supervisors were made aware of decedent's condition and treatment, and thus their personal participation has been sufficiently alleged. *See, e.g.*, *Edmisten v. McKune*, 2008 WL 2313112, *8 (D. Kan. May 30, 2008) (although supervisors may not be vicariously liable under Section 1983 for misconduct of their subordinates, their inaction, including a refusal to take corrective action, may establish the necessary acquiescence in the constitutional deprivation). Thus, plaintiff's allegation that defendant Lacie Wiggins reviewed a report concerning the use of force by a subordinate officer is sufficient to state a plausible claim against her (along with other facts alleged about her). With respect to defendants Jackie Doud and Joseph Schuetz, however, plaintiff has alleged only that they were other officers' supervisors during particular instances of alleged misconduct. In response to the motion to dismiss, plaintiff has provided use-of-force reports reviewed by those supervisors, but the Court may not consider such evidence at this stage. Thus, plaintiff has failed to allege any facts from which it could be plausibly inferred that defendants Doud and Schuetz had any

knowledge of decedent's condition. Accordingly, those claims are subject to dismissal. Plaintiff is granted leave, however, to amend her complaint to allege additional facts concerning the knowledge and personal participation of defendants Doud and Schuetz in the alleged deliberate indifference.

With those exceptions, the Court concludes that plaintiff has sufficiently pleaded a plausible claim for deliberate indifference in violation of the Fourteenth Amendment. Accordingly, the County defendants' motion to dismiss this claim is granted only as asserted against defendants Seats, Doud, and Schuetz, although plaintiff is granted to leave to amend to cure that deficiency with respect to defendants Doud and Schuetz. Moreover, the motion is granted to the extent that plaintiff must amend her complaint to clarify that this claim is asserted under the Fourteenth Amendment.

### B. Count III – Excessive Force

In Count III, plaintiff asserts a claim against the County and various individuals under Section 1983 based on allegations of excessive force used against decedent in violation of the Fourth and Fourteenth Amendments. As a preliminary matter, plaintiff does not oppose the motion to dismiss this claim as asserted against defendants David Coleman, Jeff Brewer, and Ben Weber. Accordingly, this claim is dismissed to the extent asserted against those defendants.

In addition, plaintiff does not dispute that because decedent was a pretrial detainee, this claim is properly asserted under the Fourteenth Amendment. *See Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10th Cir. 2010). Accordingly, plaintiff does not

oppose dismissal of Count III to the extent asserted under the Fourth Amendment, and that claim is hereby dismissed.[1]

The County defendants challenge the sufficiency of plaintiff's allegations of excessive force. Under the Due Process Clause of the Fourteenth Amendment, the Court's consideration of an excessive force claim focuses on three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Id.* at 1326 (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003)). "[F]orce inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment." *Id.* (quoting *Roska*, 328 F.3d at 1243).

The County defendants argue that plaintiff has failed to plead sufficiently that the force used on decedent was unnecessary, that plaintiff suffered injury, and that the particular defendants had the requisite state of mind. The Court concludes, however, that plaintiff has pleaded this claim sufficiently. Plaintiff has alleged that on three particular occasions, involving particular defendants, force was used on decedent while in detention. Plaintiff has further alleged that plaintiff experienced pain, suffering, and ultimately death resulting from those incidents. Plaintiff has pleaded that, in light of decedent's psychosis and resultant inability to comply with directions, defendants should

_____

[1]Plaintiff need not replead, as she must with respect to Count I, because in Count III she also named the Fourteenth Amendment as a basis for the right allegedly violated.

not have used force as they did; thus, plaintiff's complaint creates the reasonable inference that defendants' use of force was excessive. The Court rejects defendants' suggestion that plaintiff is improperly arguing that any use of force on a detainee is excessive, as plaintiff has merely alleged that the use of force in this case, under these circumstances, was excessive. Plaintiff has stated a plausible claim, and defendants' arguments concerning the amount of force used are better addressed on summary judgment.

The County defendants also argue that the complaint does not sufficiently allege personal participation by the supervisors on each of the three occasions (defendants Wiggins, Doud, and Schuetz). *See id.* at 1327 (liability under Section 1983 requires direct personal responsibility for the claimed deprivation). In response to this argument, the Court reaches the same conclusion that it did with respect to Count I. Thus, the claim against defendant Wiggins is sufficient, while the claims against defendants Doud and Schuetz are subject to dismissal, although plaintiff is granted leave to amend to cure that pleading deficiency.

### C. *Count V (Policies), Failure to Train, Failure to Supervise*

In Count V of her complaint, plaintiff alleges that the County and defendant Richard Kline, the Director of the County's Department of Corrections, are liable for the constitutional violations of their officers because those officers acted pursuant to policies relating to employee hiring, training, supervision, and retention. As part of Count I and Count III, plaintiff has also asserted claims against the County and Mr. Kline for failure

13

to train and failure to supervise.

The County and Mr. Kline cannot be liable under Section 1983 for the acts of their employees on a theory of *respondeat superior*, but instead may be liable only for their own acts, that is, acts that they have officially sanctioned or ordered. *See Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). The Tenth Circuit has described the standard for such municipal liability:

> Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law. Municipal liability may also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Id.* at 1188-89 (citations and internal quotations omitted). The Tenth Circuit has described supervisor liability under Section 1983 as follows:

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights.

14

In short, the supervisor must be personally involved in the constitutional violation, and a sufficient causal connection must exist between the supervisor and the constitutional violation.

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because mere negligence is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur.

*Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations and internal quotations omitted).

To prevail on a claim based on a failure to train officers, a plaintiff must show circumstances constituting a usual and recurring situation with which officers must deal; inadequate training demonstrating a deliberate indifference toward persons with whom the officers have contact; and a direct causal link between the constitutional deprivation and the inadequate training. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 841-42 (10th Cir. 1997) (citing, inter alia, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-91 (1989)).

The County defendants argue that plaintiff has only conclusorily pleaded claims based on County policies or a failure to train or supervise. The Court rejects this argument for dismissal. As plaintiff notes in her response, she has alleged specific facts concerning decedent's detention. It is true that the Tenth Circuit has held that a single

incident, without other evidence, is not sufficient to establish such a policy of inadequate training. *See Allen*, 119 F.3d at 844-45 (citing cases). In this case, however, plaintiff's complaint contains specific factual allegations relating to a number of instances over a number of days in which various officers used excessive force or otherwise failed to redress decedent's mental health issues. Thus, plaintiff has at least stated plausible claims, and the Court cannot say, at this stage, as a matter of law, that those claims cannot succeed. Accordingly, the County defendants' motion to dismiss on this basis is denied.

### D. Official Capacity Claims

The County defendants also argue that because the County was also named as a defendant in all claims against the individual County defendants, claims against the individuals in their official capacities are duplicative and therefore subject to dismissal. The Court agrees, as official capacity claims depend upon the existence of a policy or custom of the governmental entity. *See Cano v. Denning*, 2013 WL 322112, at *5 (D. Kan. Jan. 28, 2013). As previously noted, plaintiff is pursuing such claims against the County in Count V and in her failure to train and failure to supervise claims. Accordingly, all claims against the individual County defendants in their official capacities are hereby dismissed as duplicative.

### E. Count IV – Due Process

In Count IV, plaintiff asserts a claim against the County (and the City) under Section 1983, based on an alleged denial of due process in violation of the Fifth, Sixth,

and Fourteenth Amendments. Plaintiff specifically cites the defendants' conduct in "arresting and detaining Decedent for eight days for a misdemeanor offense and denying him his right to a speedy trial," which "deprived Decedent of his right not to be deprived of liberty without due process of law." In response to the County's motion to dismiss this claim, plaintiff has limited this count only to a claim that decedent was denied due process, under *Bell v. Wolfish*, 441 U.S. 520 (1979), because the officers' use of force constituted conditions amounting to punishment without due process. *See id.* at 535-36. Accordingly, all other claims against the County asserted in Count IV, including claims under the Fifth and Sixth Amendments, are hereby dismissed.

Although plaintiff argues for a claim under *Bell* based on the officers' use of force against decedent, Count IV of plaintiff's complaint contains no such claim. Moreover, the Court would not allow plaintiff to amend to plead such a claim. Plaintiff has not argued that officers may never use any force against pretrial detainees, and plaintiff has already asserted a separate claim against the County based on the allegation that the officers' use of force was excessive under the Due Process Clause. Thus, any additional claim would be duplicative. Accordingly, the Court dismisses Count IV as asserted against the County in its entirety.

### F. *Qualified Immunity*

The individual County defendants also seek dismissal of plaintiff's federal claims based on qualified immunity. The Court rejects this argument at this pleading stage. Defendants do not dispute that the law is clearly established that officers may not be

deliberately indifferent to a detainee's serious medical needs and that officers may not use excessive force on a detainee. Defendants argue that the law is not clearly established that their actions in these specific circumstances were unconstitutional. If plaintiff's allegations are credited, however, as they must be at this stage, those facts are sufficient to state a plausible claim that the officers violated clearly established law in committing constitutional violations.

### G. Counts X, XI, and XII

By Counts X, XI, and XII, plaintiff asserts state-law claims against the County defendants for battery, assault, and false imprisonment. In response to this motion, plaintiff agrees that these counts should be dismissed. Accordingly, the Court dismisses these three claims against the County defendants.

## IV. City Defendants' Motion to Dismiss (Doc. # 45)

### A. Count II – Deliberate Indifference

In Count II of her complaint, plaintiff brings a claim under Section 1983, based on her allegation that the City defendants were deliberately indifferent to decedent's serious medical needs in violation of the Eighth Amendment. Again, because decedent was a pretrial detainee, plaintiff's claim should have been brought under the Fourteenth Amendment instead of the Eighth Amendment, *see Martinez*, 563 F.3d at 1088, and this Count is therefore subject to dismissal as pleaded. The Court also concludes, however, that plaintiff's allegations do not support a plausible claim for deliberate indifference

under the Fourteenth Amendment.

Plaintiff argues that the two City police officers knew that plaintiff had a serious medical need and nevertheless chose to arrest him and take him to the County facility instead of a hospital. The complaint does not contain any facts, however, from which the officers' knowledge of plaintiff's diagnosis could reasonably be inferred. The complaint merely alleges that the officers arrested decedent after he tried to hug the officers, then spat at them and kicked one of them, while his family was attempting to have him admitted to the Valeo facility. Thus, in addition to the behavior they had witnessed, the officers knew only that decedent had mental health issues of some kind, for which he was being admitted to a "short-term crisis-oriented residential stay facility."[2] When the officers delivered decedent to the County facility, they requested that he be evaluated for risk of suicide "given his sudden mood change and his highly agitated and upset state."

As noted above with respect to the claims against the County defendants, for a plaintiff to prevail on a claim of deliberate indifference, the defendant must have disregarded the *specific* risk of the harm ultimately suffered by the detainee. In this case, there are no facts alleged to suggest that the City officers knew of the specific risk

---

[2]Although such allegations are absent from the complaint, plaintiff argues in response to Stormont's motion that the officers were also present at Stormont, where decedent had allegedly assaulted another person. Even if such facts had been pleaded here, however, the Court would reach the same conclusion that plaintiff has not stated a plausible and cognizable claim for deliberate indifference.

attendant here, that is, that decedent would suffer mistreatment or neglect by County officials and death if they took him for evaluation at the County facility instead of to a hospital. Although plaintiff alleges that decedent tried to hug, spit at, and kick the officers, the Court concludes that such behavior combined with an unspecified mental health issue does not reasonably evidence a risk that decedent would suffer mortal harm at the County facility. Moreover, even though the officers requested that decedent be evaluated for risk of suicide, there are no facts alleged that suggest that decedent would suffer the specific risks of mistreatment and death if he were evaluated at the County facility (as the officers requested) instead of at a hospital. Nor do the alleged facts suggest that those specific risks were so substantial and pervasive that their knowledge by the City officers may be inferred. *See Estate of Hocker*, 22 F.3d at 1000.

Even if such facts as alleged could create a reasonable and plausible inference to support a claim of deliberate indifference, the Court concludes that, in light of the Tenth Circuit's emphasis on the need for knowledge of the specific risk of a serious medical need, no clearly established law required that the officers allow decedent to be evaluated at a hospital instead of at the County facility where they took him. Thus, the City defendants are entitled to qualified immunity from liability. The claims against individual defendants Brad McCarter and Conrad Unruh are therefore dismissed.

Finally, because plaintiff's underlying constitutional claim has been dismissed, so too must plaintiff's claims against the City of Topeka and defendant Ronald Miller, the City's Chief of Police, for failure to train and to supervise be dismissed. *See Gray*

*v. University of Colo. Hosp. Auth.*, 672 F.3d 909, 918 n.7 (10th Cir. 2012) (no liability under Section 1983 for failure to supervise without underlying constitutional violation); *Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447-48 (10th Cir. 1990) (claim under Section 1983 for failure to train or supervise an officer requires a constitutional violation by the officer).[3]

### B. Count IV – Due Process

In response to the City defendants' motion to dismiss, plaintiff has conceded that she does not assert a due process claim against the City defendants. Accordingly, the Court dismisses Count IV as asserted against the City defendants.

### C. Count V – Policies

In Count V of her complaint, plaintiff alleges that the City and defendant Miller are liable for the constitutional violations of their officers because those officers acted pursuant to policies relating to employee hiring, training, supervision, and retention. No such municipal liability is permitted, however, in the absence of an underlying constitutional violation. *See Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996). Accordingly, based on the dismissal of plaintiff's deliberate indifference claim against the City defendants, the Court dismisses Count V as asserted against those defendants.[4]

---

[3]These claims for failure to train and failure to supervise would also be subject to dismissal for the same reasons cited above with respect to the County defendants. *See supra* Part III.C.

[4]This count as asserted against the City defendants would also be subject to dismissal for the same reasons cited above with respect to the County defendants. *See* (continued...)

### D.    Counts VI, VII, VIII – Negligence

In Count VI of her complaint, plaintiff asserts a claim of negligence under Kansas law against the City defendants.  In Counts VII and VIII, plaintiff asserts Kansas state-law claims against the City and defendant Miller for negligent supervision and negligent failure to train.  The Court agrees with the City defendants that these claims should be dismissed.

Under Kansas law, a plaintiff must show the existence of a duty to recover for negligence, and whether a duty exists is a question of law.  *See Thomas v. County Comm'rs of Shawnee County*, 293 Kan. 208, 220-21 (2011).  Plaintiff asserts that a duty to protect decedent from harm arose because of the City officers' special relationship with decedent as a detainee, pursuant to Restatement (Second) of Torts § 314A(4).  Section 314A(4) provides:

> One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

*Id.*  In *Thomas*, the Kansas Supreme Court recognized such a duty under Section 314A(4).  *See Thomas*, 293 Kan. at 225.  The Court noted the limited nature of the duty and the limited circumstances for its creation, however:

> This duty did not make defendants guarantors of [the decedent's] safety.  But it imposed upon them the obligation to exercise reasonable care under the circumstances, a duty triggered if they knew or should have

_____

[4](...continued)
*supra* Part III.C.

know of an unreasonable risk to [the decedent's] safety.

*Id.* at 226 (citing, inter alia, Restatement (Second) of Torts § 314A cmts. d, e).

Thus, in the present case, a duty to protect decedent only arose if and when the City officers knew or should have known of an unreasonable risk to decedent's safety. As the Court concluded above, the facts known to the officers, as alleged by plaintiffs, did not create an unreasonable risk that decedent would suffer harm if he were evaluated at the County facility instead of at a hospital. Accordingly, no duty arose as a matter of law, and plaintiff cannot maintain a negligence claim against the City defendants. Moreover, because no duty existed with respect to decedent, plaintiff cannot state a claim for negligent failure to train or negligent supervision. Accordingly, plaintiff's negligence claims against the City defendants are dismissed.

### E. Count XII – False Arrest

In response to the City defendants' motion to dismiss, plaintiff concedes that her claim against the City defendants in Count XII for false arrest and imprisonment is untimely. Accordingly, the Court dismisses that claim.

### F. Count XIII – Outrage

In Count XIII, plaintiff asserts a claim of outrage under Kansas law against the City defendants. The Kansas Supreme Court has summarized the requirements of a claim of outrage, also known as intentional infliction of emotional distress, as follows:

> In order to prevail in a claim of intentionally causing emotional distress, a plaintiff must prove four elements: (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the

conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe.

Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

Conduct that rises to the level of tortious outrage must transcend a certain amount of criticism, rough language, and occasional acts and words that are inconsiderate and unkind. The law will not intervene where someone's feelings merely are hurt. In order to provide a sufficient basis for an action to recover for emotional distress, conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society.

*Valadez v. Emmis Communications*, 290 Kan. 472, 476-77 (2010) (citations omitted).

The Court has little trouble concluding that plaintiff has failed to state a cognizable claim against the City defendants for outrage under Kansas law. According to plaintiff's allegations, the City officers knew that decedent was being admitted to a mental health facility, and they had observed his hugging-spitting-kicking behavior. There is no dispute that the officers had probable cause to arrest decedent. The officers' decision to take decedent to the County facility and request an evaluation there instead of taking him to a hospital may not reasonably be regarded as so extreme or outrageous or beyond the bounds of decency or utterly intolerable in a civilized society as to require the law to intervene. Therefore, plaintiff cannot satisfy the first threshold requirement for this tort, and the Court dismisses Count XIII as asserted against the City defendants.

### G. Counts XVIII, XIX – Wrongful Death, Survival Claims

Because no underlying basis for liability survives against the City defendants, the Court also dismisses plaintiff's wrongful death and survival claims (Counts XVIII and XIX) as asserted against those defendants. Thus, as asserted against the City defendants, plaintiff's complaint is dismissed in its entirety.

### V. Stormont's Motion to Dismiss (Doc. # 48)

#### A. Supplemental Jurisdiction

In Count XIV of her complaint, plaintiff asserts a claim against Stormont for medical negligence under Kansas law. Stormont argues that because the parties to that claim are not diverse, the claim should be dismissed for lack of subject matter jurisdiction.

With respect to this claim, plaintiff has invoked the Court's supplemental jurisdiction under 28 U.S.C. § 1367. That statute provides for supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* § 1367(a). Under Section 1367, a federal court's jurisdiction extends to "jurisdiction over state law claims that derive from a common nucleus of operative fact, such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'." *See City of Chicago v. International Coll. of Surgeons*, 522

U.S. 156, 164-65 (1997) (internal quotations omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then . . . there is power in federal courts to hear the whole." *United Mine Workers*, 383 U.S. at 725 (footnote omitted).

The Court concludes that plaintiff's claim against Stormont and her federal claims against other defendants do derive from a common nucleus of operative fact. Plaintiff alleges that Stormont's negligence, including the failure to treat or medicate decedent properly, led to decedent's behavior and arrest at Valeo, which in turn led to his deterioration at the County facility and eventually his death. Accordingly, the Court concludes that it may assert supplemental jurisdiction over the claim against Stormont.

Stormont further argues that even if supplemental jurisdiction exists, the Court should decline to exercise such jurisdiction in this case. Section 1367 permits a district court to decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *See* 28 U.S.C. § 1367(c). The exercise of jurisdiction under Section 1367 is a matter for the district court's discretion, and district courts are charged to act "in the manner that best serves the principles of economy, convenience, fairness, and comity" that underlie

supplemental jurisdiction. *See City of Chicago*, 522 U.S. at 172-73 (internal quotation omitted).

The Court concludes that none of the circumstances listed in Section 1367(c) is present here. The state-law claim does not predominate over the federal claims remaining in the case, and the Court does not agree with Stormont that plaintiff's medical negligence claim involves novel or complex issues of state law. The Court does not believe that there are exceptional circumstances here or that there are compelling reasons to decline to exercise supplemental jurisdiction; to the contrary, the Court concludes that exercising such jurisdiction in this case would further interests of economy and convenience. Accordingly, the Court will not decline to exercise supplemental jurisdiction over plaintiff's claim against Stormont.

### B. Duty

Stormont seeks dismissal of plaintiff's negligence claim on the basis that it lacked any duty to decedent once it referred him to Valeo and discharged him. Stormont relies on *Stovall v. Harms*, 214 Kan. 835 (1974), in which the court held that the doctrine of informed consent does not "require a general practitioner, referring his patient to a psychiatric specialist, to advise the patient of risks and dangers incident to the psychiatric treatment in the absence of unusual circumstances." *See id.* at 843. That holding is not particularly applicable here, however, as plaintiff has not alleged that Stormont was negligent in failing to advise decedent with respect to risks of treatment at Valeo.

In her complaint, plaintiff has alleged that Stormont was negligent in discharging

27

decedent without appropriate medications; failing to evaluate and provide proper treatment for decedent; failing to provide decedent with appropriate discharge instructions; and failing to communicate information to law enforcement personnel. Stormont relies on its referral of decedent to Valeo for treatment. Plaintiff has alleged acts of negligence, however, that were committed while decedent was still at Stormont. Consideration of the applicable standard of care and whether Stormont breached that standard would need to await the presentation of evidence, including expert evidence. The Court rejects Stormont's argument for dismissal based on a lack of duty.

### C.    Proximate Cause

Stormont also argues that plaintiff's claim should be dismissed because the alleged negligence was not the proximate cause of decedent's injuries as a matter of law. To establish a claim based on medical negligence under Kansas law, a plaintiff must prove that "the injury proximately resulted from the health care provider's breach of the standard of care." *See Puckett v. Mt. Carmel Reg. Med. Ctr.*, 290 Kan. 406, 420 (2010). The Kansas Supreme Court has set forth the law in this State concerning proximate cause as follows:

> Kansas follows the traditional concept of proximate cause, i.e., individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience. Kansas appellate courts have consistently defined "proximate cause" as that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.

This traditional statement of proximate cause incorporates concepts that fall into two categories: causation in fact and legal causation. To prove causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must show that it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable. The concept of "intervening cause" relates to legal causation and does not come into play until after causation in fact has been established.

An intervening cause is "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of Torts 441 (1964). An intervening cause absolves a defendant of liability only if it supersedes the defendant's negligence. In other words, the superseding and intervening cause component breaks the connection between the initial negligent act and the harm caused. But, one more factor—foreseeability—must be considered. If the intervening cause is foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause.

*See id.* at 420-21 (internal citations and quotations omitted). The Kansas Supreme Court further approved of this statement of the law from Kansas's pattern instruction:

If an injury arises from two distinct causes which are independent and unrelated, then the causes are not concurrent. Consideration then must be given to the question of whether the causal connection between the conduct of the party responsible for the first cause and the injury was broken by the intervention of a new, independent cause which acting alone would have been sufficient to have caused the injury. If so, the person responsible for the first cause would not be at fault. If, however, the intervening cause was foreseen or should reasonably have been foreseen by the person responsible for the first cause, then such person's conduct would be the cause of the injury, notwithstanding the intervening cause, and he or she would be at fault.

*See id.* at 421-22 (quoting PIK Civ. 4th 104.03). The court in *Puckett* further confirmed

that these concepts of proximate and intervening cause apply even where principles of comparative fault may also apply. *See id.* at 422-23.

Section 448 of the Restatement is also applicable in this case. That section provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448. In *Citizens State Bank v. Martin*, 227 Kan. 580 (1980), the Kansas Supreme Court cited Section 448 with approval and further noted that unforeseen acts of gross and wanton negligence have also been found to be intervening causes under Kansas law. *See id.* at 588-89.

Finally, Section 442 of the Restatement provides additional guidance by noting the following important considerations for the determination of whether an intervening force constitutes a superseding cause:

> (a)     the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

> (b)     the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c)     the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d)     the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e)     the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f)     the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*See* Restatement (Second) of Torts § 442.

Plaintiff argues that Stormont's negligence led to decedent's arrest, which set in motion the chain of events that caused him to suffer harm.  That argument bears only on causation in fact, however; the fact that the alleged negligence by Stormont may have provided an opportunity for the acts that subsequently caused decedent's injuries does not mean that Stormont's negligence was the proximate cause of plaintiff's injuries, as required for a viable claim.

The Court concludes as a matter of law that the facts alleged by plaintiff do not support a claim that Stormont's negligence proximately caused decedent's injuries. Plaintiff alleges that Stormont was negligent in failing to treat decedent or to communicate his condition to law enforcement personnel.  Decedent's bodily injuries and death were not the natural and probable consequences of that alleged negligence by

Stormont, however.  According to the complaint, decedent was injured only after the action of a number of subsequent forces:  his behavior towards the officers at Valeo; the officers' decision to arrest him; his imprisonment at the County facility; and the County officers' mistreatment of decedent, including the use of excessive force, assault and battery and false imprisonment, and deliberate indifference to decedent's medical needs. Those intervening causes would have been sufficient by themselves to cause decedent's injuries.  Moreover, a jury might find that it was reasonably foreseeable to Stormont that its negligent acts could have resulted in decedent's arrest; but a jury could not reasonably find that decedent's subsequent mistreatment and injuries suffered at the County facility were a reasonably foreseeable result of its decision to refer decedent to Valeo for treatment, without treating decedent or communicating his condition to law enforcement officers, at a time when decedent was in good physical condition.  Accordingly, the alleged negligence by Stormont is too attenuated and thus cannot serve as a basis for plaintiff's recovery for these injuries suffered by decedent.  As Justice Cardozo stated in the seminal case on proximate cause, *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99 (N.Y. 1928), "[p]roof of negligence in the air, so to speak, will not do."  *See id.* at 99 (citation omitted), *quoted in Edwards ex rel. Fryover v. Anderson Eng'g, Inc.*, 45 Kan. App. 2d 735, 742 (2011).

This conclusion is supported by a consideration of the factors set forth in Section 442 of the Restatement.  First, the allegedly negligent acts by Stormont might ordinarily

be expected to result at worst in decedent's causing harm to himself or others; thus, the harm that occurred—decedent's death after a severe deterioration in health while in custody—was different in kind from that which would otherwise have resulted from Stormont's negligence. Second, the chain of events leading to decedent's death, including the County officers' failure to prevent the severe deterioration in decedent's health, was rather extraordinary in view of the circumstances faced by Stormont. Third, the County's officers' actions and inaction were not the normal result of Stormont's alleged failure to treat decedent. Fourth, the operation of the intervening forces resulted from the acts and omissions of third parties, namely, the various law enforcement officers. Fifth, those officers' actions and inaction are alleged by plaintiff to have been wrongful, and plaintiff seeks to impose liability on those officers for their conduct. Sixth, those officers are alleged to be especially culpable, as plaintiff has alleged not only their negligence, but also their deliberate indifference and their commission of intentional torts.

The Court thus concludes as a matter of law that, under the facts alleged by plaintiff, the alleged negligence by Stormont was not a proximate cause of the harm suffered by decedent. Accordingly, the Court dismisses the medical negligence claim asserted against Stormont.

IT IS THEREFORE ORDERED BY THE COURT THAT the County

defendants' motion to dismiss (Doc. # 42) is **granted in part and denied in part**. The motion is granted with respect to the following claims: Count I; Count III to the extent based on a violation of the Fourth Amendment; Count III asserted against defendants Coleman, Brewer, Weber, Doud, and Schuetz; Counts IV, X, XI, and XII; and all claims asserted against individual County defendants in their official capacities. Those claims are hereby dismissed. The motion is otherwise denied. Plaintiff is granted leave to amend her complaint, on or before **May 3, 2013**, to cure certain pleading deficiencies as set forth herein.

IT IS FURTHER ORDERED BY THE COURT THAT the City defendants' motion to dismiss (Doc. # 45) is **granted**, and all claims against defendants City of Topeka, Ronald Miller, Brad McCarter, and Conrad Unruh are hereby dismissed.

IT IS FURTHER ORDERED THAT defendant Stormont-Vail HealthCare, Inc.'s motion to dismiss (Doc. # 48) is **granted**, and plaintiff's claim against that defendant is hereby dismissed.

IT IS SO ORDERED.

Dated this 17th day of April, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge